## Case No. 14,238.

### TUNNO v. PREARY.

#### [Bee, 6.][1]

District Court, D. South Carolina. 1794.

##### NEUTRALITY—SEA LETTER—SEIZURE.

A sea letter not the only document necessary to establish the neutral character of a vessel belonging to the United States under treaty with France.

[This was a libel by Thomas Tunno against Benedict Preary.]

BEE, District Judge. Libel states that on the 13th September last, the snow Nancy, Clark, master, an American vessel owned in this place, was boarded on the high seas by an officer and some of the crew of the Joujon French privateer; and that twelve thousand dollars were carried away from said snow by one Brown, the officer who boarded. That the said dollars were shipped by Thomas Plunkett, an American citizen, resident at the Havanna, and consigned to the actor in this cause. That they were put in charge of Don Lewis Cuesta, a passenger on board, who had also a bill of lading and letter of advice respecting this money, which, together with the money, were carried off as above stated. The claim and answer state that this was not a lawful American vessel, and not furnished with the usual and necessary papers. It is denied that the dollars in question belonged to Plunkett, or that said Plunkett was an American citizen; and it is alleged that the vessel was collusively engaged in the Spanish trade, and this money liable to seizure as Spanish property. It is clear from the evidence that this is an American vessel, owned by citizens of the United States, and duly registered in this port. It appeared also that she had no sea letter, there being none at the custom-house when she sailed.

1 [Reported by Hon. Thomas Bee, District Judge.]

The only ground relied on in arguing this cause, was the necessity of a sea letter, according to the 25th article of our treaty with France. It was strongly contended that the said article makes the sea letter or passport the only criterion of a free vessel. But this does not appear to me to be the case. If, indeed, an American vessel should be without this passport, and other suspicious circumstances should appear, the French ship of war would be justified in making further search, and, if it should seem proper, in carrying the vessel infrà præsidia of the French courts, for inquiry and adjudication. This has frequently been done; nor will such conduct incur damages if the neutral vessel should be ultimately discharged. In two late cases, The Grand Sachem [Del Col v. Arnold, 3 Dall. 333] and The Polly, the passports so much clamored for, were on board, and were regularly produced; but they availed nothing, for both those vessels were seized and plundered. I cannot say what might have been the case here; but I am clearly of opinion that no article of the treaty could justify the carrying away of this money, without legal adjudication. Some arguments in favour of the claimant were drawn from the law of nations; but they cannot apply where, as in this case, a treaty subsists to guide us. It was said that a proclamation of the president required that all American vessels should be provided with a sea letter. Upon inquiry I find that, by instructions from the treasury department, the different collectors were enjoined to furnish sea letters for the better identification and security of our ships, and as being valuable in several points of view. This is unquestionable, but cannot make law.

Brown, the boarding officer, was an old American ship master; he examined the papers of this vessel, and must have been satisfied of her neutral character, without which he would have made prize of her and of her cargo, which was Spanish. He would also have seized other sums of money, produced by the captain of the snow as belonging to himself. He might have taken all with equal propriety; but he knew that the vessel was free, and made all on board so. Even contraband was not liable to seizure, unless there had been proof of its being bound to the port of an enemy. The 23d article of the treaty should have taught Mr. Brown its true construction and spirit; he must abide the consequences of disregarding it. It is unfortunate for this claimant to have been connected with persons capable of acting as these privateersmen did. Owners should be careful whom they trust; otherwise, without fault, they will be exposed to frequent misfortune. I am pleased to learn that two thirds of the plundered money have been already recovered from the grasp of those who took it, and I shall at all times afford the aid of this court to pursue the remainder into whatever hands it may have fallen. At present, I adjudge and decree that the claim in

this case be dismissed with costs, and that the sum of 12,000 dollars be paid by the claimant to the actor.